

655 Third Avenue
Suite 1821
New York, NY 10017
Tel. No. 212.679.5000
Fax No. 212.679.5005

1010 Northern Boulevard
Suite 328
Great Neck, NY 11021
Tel. No. 516.248.5550
Fax No. 516.248.6027

January 28, 2019

*Via ECF*
The Honorable Paul E. Davison
United States Magistrate Judge for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *Salto v. Alberto's Construction, LLC, et al.*
              <u>Docket No.: 17-cv-03583 (PED)</u>

Dear Judge Davison:

       This firm represents Plaintiff Robinson Salto in the above-referenced matter in which he brings claims against Alberto's Construction, LLC and Carlos Rivera-Salto, individually, (collectively as "Defendants," and together with Plaintiff as "the Parties"), his former employers, for, *inter alia*, alleged overtime violations under the Fair Labor Standards Act ("FLSA"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] A copy of the Parties' fully-executed settlement agreement is attached hereto as **Exhibit A.**[2]

---

[1] On December 5, 2018, the District Court entered an Order referring the matter to this Court's jurisdiction for all purposes on the Parties' consent.

[2] Plaintiff also brings claims in this case for Defendants' alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement, do not require court approval for dismissal. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

I.  **PRELIMINARY STATEMENT**

On May 12, 2017, Robinson Salto filed a Complaint in this Court against Defendants - - a construction company and its owner - - on behalf of himself and on behalf of those similarly-situated under 29 U.S.C. § 216(b), asserting claims that Defendants, *inter alia*, failed to pay him overtime pursuant to the FLSA. *See* Dkt. No. 1. Specifically, Plaintiff alleged that he worked for Defendants as a construction worker from 2007 up until on or around the date of the filing of the Complaint, and that during that time, he routinely worked in excess of forty hours per week. For his work during this time period, Plaintiff claims that Defendants failed to pay him at the statutorily-applicable overtime rate of pay for all hours that he worked each week in excess of forty, and instead paid him a straight hourly rate for all hours that he worked including those beyond forty.[3]

On or around July 6, 2018, the Parties exchanged initial disclosures. Following the initial conference on July 25, 2018, the Parties discussed the documents in their possession representing wages paid and hours worked, exchanged certain relevant documents, and Defendants agreed to provide their financials in order to aide settlement discussions. Following the receipt of financials, the Parties exchanged a demand and an offer, but remained far apart in terms of resolution.

On September 12, 2018 and October 26, 2018, the Parties participated in two telephone conferences with Your Honor, during which the Parties discussed the prospects of settlement. At the Parties' request, on November 6, 2018, the Parties participated in a Court-supervised settlement conference, attended by Plaintiff and Defendant Carlos Rivera-Salto. As result of the Court's efforts in discussing resolution with each side in private caucus, and back and forth negotiation, the Parties ultimately agreed to settle the matter.

Specifically, based on Plaintiff's damages and with the Court's assistance, the Parties agreed to settle the matter for $60,000.00, to be in equal installment payments over twelve months, with the first payment to be paid within thirty days of the Court's approval, or March 1, 2019, whichever date is later, and each subsequent payment due every thirty days thereafter. Importantly, the settlement agreement protects Plaintiff in the event of a default, which would require Defendants to pay 200% of the remaining balance should a default occur at any point, and additionally requires the payment of attorneys' fees and costs for seeking a default order. Additionally, Plaintiffs' counsel respectfully submits an application for one-third of the total net settlement amount after deduction of litigation expenses, or $19,602.71, as attorneys' fees, and

---

[3] As the Court is aware from the settlement conference, Plaintiff subsequently discontinued and then recommenced his employment with Defendants, and worked there until the Parties reached agreement to settle the action at the Court-supervised settlement conference.

$1,191.87 as reimbursement for their out-of-pocket litigation expenses. If approved, each installment payment would be distributed on a pro rata basis between Plaintiff and counsel.

## II. THE AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. "The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *accord In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Westerfield v. Washington Mut. Bank*, 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (same).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *1 (S.D.N.Y. Feb. 3, 2016) (Sullivan, *J.*) (applying *Wolinsky* factors). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*. (citing *Wolinsky*, 900 F. Supp. 2d at 335).

### A. Range of Possible Recovery

In this case, Plaintiff claims that he worked for Defendants as a construction worker from 2007 until on or around the commencement of this action. Specifically, from May 12, 2011 through May 12, 2017, Plaintiff alleges that he worked five to six days per week, from 7:00 a.m. until approximately 5:00 p.m., with a thirty-minute lunch break each day. As a result, Plaintiff

alleges that he worked between approximately forty-seven and one-half and fifty-seven hours each workweek. For each workweek that Plaintiff worked, Defendants paid Plaintiff $20.00 per hour for all hours that he worked, including those in excess of forty per week, therefore paying him straight-time for all hours worked beyond forty.

As discussed at the settlement conference, Plaintiff discontinued working for Defendants shortly after filing this Complaint, but then subsequently began working for Defendants only months later. Also discussed in detail, the matter was further complicated by the fact that Plaintiff and Defendant Rivera-Salto are family members, creating an unusual dynamic in terms of resolution. Lastly, Defendants provided complete financial documents at the settlement conference, and permitted Plaintiff to review the financials with his counsel in order to properly evaluate Defendants' financial capabilities with respect to settlement. These records showed that Defendants' financial capability was limited, and accordingly persuaded Plaintiff that any pursuit of a collective action would not be prudent. In light of the arguments presented by both sides, with the assistance of the Court, the Parties were able to reach a compromise at fifty-two and one-quarter hours (representing the mid-point between Plaintiff's alleged hours worked) and agreed to settle the matter for $60,000.00.

Based on the hours and wages explained above, the settlement provides Plaintiff with substantial recovery under the FLSA - - which has a maximum three-year limitation period, but only a two-year period if an employee does not prove willfulness, *see* 29 U.S.C. § 255(a) - - for both his actual and liquidated damages in relation to his best possible day at trial. Indeed, Plaintiff's range of recovery is presented as follows:

| Weeks Worked Within FLSA Statute of Limitations | Hours Alleged | Maximum Actual Plus Liquidated Recovery | Settlement Amount Received After Fees/Costs | Recovery Percentage Compared to Best Day |
|---|---|---|---|---|
| 156 | 57.5 | $54,800.00 | $39,205.42 | 71.5% |

Clearly, due to the calculation of Plaintiff's damages, considering his best day based upon his allegations and his actual recovery under the Parties' settlement, this agreement is undoubtedly both fair and reasonable. Indeed, there is a realistic possibility that Plaintiff would actually receive less if this case had not settled for the amount that it did and proceeded to trial. If a jury determined that Plaintiff worked on the lower end of his alleged hours, his maximum FLSA recovery would then be $23,400, which would be significantly less than the amount he is receiving as a result of this settlement. Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA, the court may, in its sound

discretion, award no liquidated damages." *Id*. at *3-4 (finding that plaintiff failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them). Thus, if Plaintiff were unable to establish willfulness, or if the Defendants produced evidence of good faith, Plaintiff's FLSA recovery could be significantly less than what he is receiving as a result of this settlement. Moreover, although the settlement terms provide for twelve months of equal payments, should Plaintiff proceed, any recovery would be obtained far later than twelve months.

Thus, the result ultimately achieved for Plaintiff not only represents a fair and reasonable recovery in light of his best possible result, it is also potentially better than Plaintiff would receive under the FLSA even on his best day at trial. This factor overwhelmingly favors approval.

### B. Avoidance of Burdens and Expenses

Second, settling at this stage obviously allows the Parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the Parties would have then been obligated to complete formal document discovery, depositions of all parties, and subsequent motion practice. The Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiff's claims at potentially great expense. At this point in the action, there have not been substantial out-of-pocket litigation expenses incurred, but post-depositions, the costs would naturally balloon. This settlement eliminates all of those costs and delays and this clearly weighs in favor of approval.

### C. Litigation Risks

Third, of course, all parties face the risk of losing at trial, either in whole or in part. Here, even if Plaintiff were to succeed on liability, there are four risks that could serve to either minimize or eliminate Plaintiff's recovery: (1) failure to prove that Plaintiff worked the amount of hours that he alleged; (2) failure to prove willful violations of the FLSA; (3) Defendants reasonably could show that they made a good faith effort to comply with the statute; and (4) Defendants' inability to withstand a greater judgment, or any judgment at all, in light of their financials. Considering these attendant risks, the settlement amount here heavily weighs in favor of a fair and reasonable result that warrants this Court's approval.

### D. Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before expending otherwise-inevitable resources on document production, depositions, and before any motion practice. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the Court assisted both sides in coming to a fair and reasonable

compromise. Indeed, the fact that the Parties' settlement was reached at a Court-supervised settlement conference based primarily upon the Court's guidance and assessment of the "risks of litigation and the benefits of the proposed settlement," bolsters the presumption of fairness. *Romero v. ABCZ Corp.*, 2017 WL 2560004, at *2 (S.D.N.Y. June 12, 2017). Accordingly, the settlement achieved clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Moreover, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in paragraph 1 of the Settlement Agreement is limited solely to any wage and hour claims that Plaintiff has or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). To the contrary, this release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause that unduly restricts Plaintiff's ability to discuss the settlement, or an overly broad non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3 (S.D.N.Y. Jun. 10, 2016) ("While not every non-disparagement clause in an FLSA settlement is *per se* objectionable, a clause which bars a plaintiff from making negative statements about a defendant must include a carve-out for truthful statements about a plaintiff's experience in litigating his case."). Here, the clause found in paragraph 6(A) of the Parties' settlement agreement contains that carve out.

Considering the risks and potential costs and resources that would be expended in further litigation in this case, including those as outlined above, Plaintiff maintains that this settlement is an excellent result and the Court should approve it as fair and reasonable.

Moreover, the Parties' proposed order, submitted with the present motion as **Exhibit B**, requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary. Should the Court decline to endorse that Order and issue its own from scratch, the Parties respectfully request that any such Order include that provision.

### III.    ATTORNEYS' FEES ARE ALSO REASONABLE

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015)

(citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiff's counsel requests that the Court approve fees of one-third of the net settlement, plus expenses, which is "consistent with the norms . . . in this circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the net settlement. *See Flores*, 104 F. Supp. 3d at 306 (noting that the percentage of recovery method is "the trend in this Circuit."); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiff's counsel's requested fee of $19,602.71, or one-third of the net settlement, is entirely reasonable and consistent with that law.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiff's counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, Jeffrey R. Maguire, the Firm's senior counsel would seek $295 per hour, the Firm's junior associates would seek $200 per hour, and the Firm would seek $90.00 per hour on behalf of its paralegals/legal assistants. Courts within this Circuit regularly approve these rates in FLSA cases. *See Vivaldo v. United*

*Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Simono v. Gemco Realty II, LLC*, Docket No.: 1:16-cv-05385 (AJN), Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (approving as reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals); *Amador et al. v. CILS, LTD, et al.*, No. 16-cv-1733 (VB) (S.D.N.Y. Feb. 28, 2017) (approving as reasonable rates of $400 per hour for Mr. Borrelli, $350 for Mr. Coleman, between $200 and $275 for the firm's associates); *Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 per hour for one of the firm's junior attorneys, and $100.00 per hour for the Firm's paralegals).

The Firm calculated its lodestar to be $42,927.50, not including the time Plaintiff's counsel spent on this motion. Thus, the Firm's requested fee of $19,602.71 is substantially less than that figure. Plaintiff's counsel's contemporaneous billing records are annexed hereto as **Exhibit C**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $1,191.87 in out-of-pocket expenses, comprised mainly of the filing fee, service of process, and postage. Plaintiff's counsel's expense statement is annexed hereto as **Exhibit D**.

## IV. CONCLUSION

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms should that become necessary. There is a proposed order attached hereto as **Exhibit B** for the Court's convenience.

Respectfully submitted,

_____
Jeffrey R. Maguire, Esq.
*For the Firm*

C: All Counsel of Record *via* ECF