UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBINSON SALTO, on behalf of himself, individually, and on behalf of all others similarly-situated,<br><br>        Plaintiff,<br><br>- v -<br><br>ALBERTO'S CONSTRUCTION, LLC and CARLOS RIVERA-SALTO,<br><br>        Defendants. | Docket No.: 7:17-cv-03583 (PED)<br><br>**DECLARATION OF DAVID A. TAUSTER IN OPPOSITION TO ENFORCE THE SETTLEMENT AGREEMENT AND ENTER JUDGMENT** |

  David A. Tauster hereby declares and avers the following:

  1.  I am an associate with the law firm of Nixon Peabody LLP, counsel to Defendants Alberto's Construction, LLC and Carlos Rivera-Salto ("Mr. Rivera-Salto") (collectively, "Defendants"). I submit this declaration in opposition to Plaintiff Robinson Salto's ("Plaintiff") motion to enforce the settlement agreement and enter judgment.

  2.  Contrary to the assertions in the instant motion, Defendants have already paid Plaintiff the full amount due to him under the settlement. See Affidavit of Carlos Rivera-Salto ("Rivera-Salto Affidavit") at ¶¶ 3, 12; Exhibits "A" and "B" to Rivera-Salto Affidavit. Accordingly, all that remains to be paid are the remaining fees due to opposing counsel.

  3.  Moreover, as acknowledged in the Declaration of Jeffrey R. Maguire, Esq. in Support of Plaintiff Robinson Salto's Motion to Enforce the Settlement Agreement and Enter Judgment (the "Maguire Declaration"), Defendants "have made nine payments under the agreement to Plaintiff's counsel for attorneys' fees/costs, totaling $15,595.94." See Maguire Declaration at ¶ 17. While there remains a balance due under the settlement for attorney's fees and costs of approximately $5,198.65, see id., Defendants are continuing to make payments

towards that balance as required by the settlement agreement, and are not presently in default of said payments.  See Rivera-Salto Affidavit at ¶ 4.

4. As extensively addressed in the Rivera-Salto Affidavit, Plaintiff's claim that he was not paid the settlement amount is hardly worthy of credence.  Rather, the instant motion simply reflects Plaintiff's latest effort to extort an undeserved windfall against Mr. Rievera-Salto.

5. As noted in the Rivera-Salto Affidavit, Plaintiff appears to have fled the United States after being arrested for drunk driving following a serious accident.  See Rivera-Salto Affidavit at ¶¶ 6, 7.  Notably, Mr. Rivera-Salto is the one who bailed Plaintiff out of jail, in an effort to help out his uncle.  Id. at ¶ 6.  From there, Plaintiff traveled to Ecuador, and began harassing Mr. Rivera-Salto's relatives in an effort to obtain payment of the settlement amount ahead of the schedule approved by the Court.  See Rivera-Salto Affidavit at ¶ 8.

6. Ultimately, after conferring with his brother, Romulo H. Rivera, Mr. Rivera-Salto made an arrangement whereby his family would pay Plaintiff the full settlement amount, in the form of the two certified check annexed at Exhibit "A" to the Rivera-Salto Affidavit purchased by Mr. Rivera.  See Rivera-Salto Affidavit at ¶ 12; Exhibits "A" and "B" to Rivera-Salto Affidavit.

7. Defendants concede that this payment was not in strict compliance with the settlement agreement.  Yet there can be no credible dispute that if Defendants mailed these checks to Plaintiff's counsel, rather than tendering them to Plaintiff directly, the parties would be in agreement that the settlement had been paid.  Thus, it is only because the settlement payment was made directly to Plaintiff himself, and that Plaintiff is (incredibly) claiming that he did not receive the payment, that we are here in the first instance.

8.	When Plaintiff's counsel advised undersigned counsel of Defendants' purported failure to pay the settlement amount, undersigned counsel tendered copies of the aforementioned checks to Plaintiff's counsel, in the form of the e-mail annexed hereto at Exhibit "A".  Notably, while the Maguire Declaration and the exhibits annexed thereto challenge some of the evidence which Defendants tendered to Plaintiff's counsel to substantiate that the settlement payment was made, none of these exhibits (nor the Maguire Declaration itself) even reference the copies of the checks themselves.

9.	The only documents which are actually addressed by the purported "investigative report" obtained by Plaintiff, annexed to the Maguire Declaration at Exhibit "E", are two letters addressed to undersigned counsel from Banco Bolivariano.[1]  But somewhat ironically, the fact that Plaintiff seems to be suggesting that it is a simple matter to forge correspondence from the bank should *equally* cast aspersions upon his own purported investigative report.  Similarly, that Plaintiff's counsel failed to annex copies of the two certified checks to the Maguire Declaration – which were provided to him in March 2019 – and the fact that same are not addressed at all in the purported investigative report, should cast aspersions on Plaintiff's argument that he was not actually paid the settlement amount.

10.	Lastly, it should be noted that there is a conspicuous absence from the papers submitted in support of Plaintiff's motion – an affidavit from Plaintiff himself.  While there appears to be a letter from Plaintiff included with the investigative report, which may be notarized, this letter only appears to dispute the letters provided by Banco Bolivariano – not the checks.  Indeed, from the Maguire Declaration, it is unclear if Plaintiff was ever actually

---

[1] For the avoidance of doubt, undersigned counsel did not contact Banco Bolivariano to obtain these letters, and had no involvement in requesting or preparing same from Banco Bolivariano, notwithstanding that the letters were addressed to undersigned counsel.

confronted with the evidence of the canceled checks from Banco Bolivariano, which may have dissuaded him from attempting to extort further monies from Defendants by filing this motion.

11. For the avoidance of doubt, undersigned counsel is in no way, shape or form accusing Plaintiff's counsel of *any* wrongdoing in this matter, and appreciates the difficulties that Plaintiff's counsel must have in representing a client who is, on information and belief, a fugitive from justice residing in another country. However, the fact remains that Plaintiff has made no effort to contest the validity of the copies of the checks tendered to Plaintiff's counsel, nor has Plaintiff submitted any sworn statement that could conceivably have any weight in considering this motion.

12. Accordingly, Defendants contend that it is apparent that Plaintiff has been paid, and that the instant motion is unwarranted and should be denied. At the absolute most, there is an evidentiary dispute as to whether Plaintiff has already received the full settlement amount. However, given Mr. Rivera-Salto's willingness to submit a sworn statement to the Court, a step which Plaintiff does not appear to have been willing to take himself, it is clear that the scales should tip in favor of a finding that Plaintiff has been fully compensated under the settlement agreement.

13. Ultimately, if the Court is not inclined to deny the instant motion on the papers, Defendants believe that the most appropriate way to resolve the matter would be to hold a hearing given the seeming dispute as to the underlying evidence. At this hearing, the Court can take sworn testimony and evaluate the credibility of the witnesses and evidence presented first-hand. However, given the evidence submitted herewith, it is apparent that the motion should simply be denied.

- 5 -

WHEREFORE, it is requested that Plaintiff's motion be denied; or, in the alternative, that this Court hold an evidentiary hearing prior to rendering a determination on the motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2020

<pre>
                              By:    /s/ David A. Tauster
                                         David A. Tauster
</pre>

4810-8648-9260.1

# EXHIBIT "A"

# Tauster, David

| | |
|---|---|
| **From:** | Tauster, David |
| **Sent:** | Tuesday, March 26, 2019 12:13 PM |
| **To:** | 'Jeffrey R. Maguire' |
| **Cc:** | Meyer, Jeffery |
| **Subject:** | Salto v. Alberto's |
| **Attachments:** | IMG_2135.jpg; 4.jpg; 1 - 0001.jpg; 4.jpg; 3.jpg |

Hi Jeff:

I hope all is well.

I had an interesting discussion with Carlos Rivera today.

According to Carlos, Robinson was arrested for DWI on January 29, and Carlos bailed him out. From there, Robinson seems to have fled the country to Ecuador. While in Ecuador, Robinson apparently harassed Carlos' family and, it seems, even hired some gang members to terrorize them. Long story short, Carlos' family obtained the attached bank checks for Robinson, in the total amount of $40,000, which I understand that Robinson cashed. Carlos noted that the police in New Jersey are still looking for Robinson, given that he seemingly fled the Country after his arrest.

This is obviously a new one for me, but based on these checks and Carlos' explanation of the events our position would be that any obligation to Robinson has been fully and finally satisfied. That said, I confirmed with Carlos that he will continue making your monthly fees payments pursuant to the agreement.

I'm happy to discuss further if need be, but otherwise just let me know if you do not receive any of your fees payments.

Best,
David



**David A. Tauster**
Associate
dtauster@nixonpeabody.com
T 516-832-7559 | C 516-428-5339 | F 844-830-7875
Nixon Peabody LLP | 50 Jericho Quadrangle | Suite 300 | Jericho, NY 11753-2728
nixonpeabody.com | @NixonPeabodyLLP

Please consider the environment before printing this email.

This email message and any attachments are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you are not an intended recipient, please notify the sender immediately and delete the message from your email system. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful. Thank you.



**POTENTIAL LIABILITY WARNING** – N.J.S.A. 39:4-50.22 (Rev. 2-26-2004) FORM

**Defendant Information**

| Name: Last, First, M.I. | DL# & State | Case # 19-008117 |
|---|---|---|
| Salto-Zhindon, Robinson | SALTORG452BQ   W | **Arresting Officer Information** |
| Street Address | Birth Date | |
| 72 Fournier Cres | 01/18/55 | Name: Last, First, M.I. Rank |
| Town, State ZIP | Arrest: Date & Time | P.O. Panagiotis Seretis 334 |
| Elmwood Park, NJ 07407 | 01/29/19   20:39 | Badge # 334 |

Violation(s) Charged:
(Check appropriate boxes)
[X] N.J.S.A. 39:4-50(a), DWI
[ ] N.J.S.A. 39:4-50.2, Refusal to submit to chemical breath testing

You have been summoned by, or on behalf of, the person whose name appears above as "defendant," to transport or accompany the defendant from this law enforcement agency. The defendant has been arrested and charged with one or both of the motor vehicle violations checked in the box above. Pursuant to N.J.S.A. 39:4-50.22, this WARNING is to advise you that if you accept responsibility to transport or accompany the defendant, and you permit or facilitate the operation of a motor vehicle by the defendant while the defendant is intoxicated or has a blood alcohol concentration at, or above, that permitted by law (N.J.S.A. 39:4-50), then you are potentially subject to criminal penalties and civil liability.

Permitting a person who is intoxicated or who has a blood alcohol concentration at, or above, that permitted by law, to operate a motor vehicle is a violation of N.J.S.A. 39:4-50(a). If you are charged and convicted under that statute: your driving privilege will be suspended; fines and monetary penalties will be imposed; and you may be incarcerated. If you permit or facilitate the defendant to operate a motor vehicle while the defendant remains intoxicated or has a blood alcohol concentration at, or above, that permitted by law, and the defendant becomes involved in a motor vehicle collision where other persons are injured or killed, then you may be subject to indictment and criminal prosecution. If you are prosecuted and found guilty, the court can impose fines and mandatory penalties, and a prison sentence. In addition to any criminal liability, if you permit or facilitate the defendant to operate a motor vehicle while the defendant remains







