UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBINSON SALTO, on behalf of himself,
individually, and on behalf of all others similarly-
situated,

                           Plaintiff,

        - v -

ALBERTO'S CONSTRUCTION, LLC and
CARLOS RIVERA-SALTO,

                    Defendants.

Docket No.: 7:17-cv-03583 (PED)

**AFFIDAVIT OF CARLOS
RIVERA-SALTO IN
OPPOSITION TO PLAINTIFF'S
MOTION TO ENFORCE THE
SETTLEMENT AGREEMENT
AND ENTER JUDGMENT**

Carlos-Rivera Salto, being duly sworn, deposes and says:

1.      I am the principal of Defendant Alberto's Construction, LLC and a named defendant in the above referenced matter.

2.      I submit this affidavit in opposition to Plaintiff Robinson Salto's ("Plaintiff") Motion to Enforce the Settlement Agreement and Enter Judgment. The matters stated herein are within my personal knowledge and I am competent to testify to them.

3.      I am not sure why this motion is necessary. I arranged for Plaintiff to be paid all of the money he is due under the settlement agreement for this lawsuit. In fact, as described below, I arranged for Plaintiff to be fully paid up-front, rather than pursuant to the schedule set forth in the settlement agreement.

4.      I have also made the payments to Plaintiff's counsel as required under the settlement agreement. While I fell behind at one point, I have since remedied that outstanding balance, and am on track to finish paying off the settlement as required by the settlement agreement. It would therefore be unjust and unfair for the Court to find that I am in default under the settlement agreement, and enter a judgment against me in the amount of $90,679.14.

5.      While I do not believe this motion is necessary given that I have paid the settlement amount to Plaintiff and am making payments to his counsel, I hope the Court will find the following background information useful in making its decision.

6.      On or about January 29, 2019, Plaintiff contacted me from jail after he had been arrested for drunk driving in New Jersey. I later learned that Plaintiff was involved in a car accident that had injured two people, and was facing serious charges that might result in prison time. While Plaintiff had filed this lawsuit against me, he was still my family member (specifically my uncle), and so I decided to help him by bailing him out of jail.

7.      After I bailed Plaintiff out of jail, I understand that Plaintiff left the country and returned to his country of origin, Ecuador. I moved to the United States from Ecuador, and I still have family living in that country including my brother, Romulo.

8.      Shortly after he returned to Ecuador, Plaintiff began harassing my family about the settlement payments that were due to him under the settlement agreement I entered into to resolve this lawsuit. On one occasion, I understand that Plaintiff came to my father's house with several armed men and threatened him.

9.      After this incident, Romulo contacted me to ask why Plaintiff was harassing my family. At that time, I told Romulo that I had settled a lawsuit with Plaintiff, and that he was apparently trying to get paid ahead of the settlement schedule.

10.     In order to end the harassment, I arranged with Romulo that he would pay the full settlement amount to Plaintiff on my behalf. However, while Romulo had the money to pay the settlement amount up front (being a successful architect in Ecuador), I did not have that much money available to reimburse him. Accordingly, in exchange for him making the payment to Plaintiff, I agreed to transfer a house that I purchased in Ecuador a few years earlier to Romulo.

4810-8648-9260.1

11.     I will note that the house was actually purchased in Romulo's name, so there is no deed of transfer or other document about this transfer. Moreover, I understand that Romulo has since sold this house. Nevertheless, the transfer did, in fact, occur, and was the means I used to finance the settlement payment.

12.     I understand that Plaintiff initially tried to force Romulo to make the settlement payment in cash, but fortunately Romulo resisted. Instead, I understand that Romulo subsequently purchased two certified checks from Banco Bolivariano on March 2, 2019 and March 5, 2019, each in the amount of $20,000, payable to "Robinson Gilberto Salto," and that this is how he paid the settlement amount to Plaintiff. As these were certified checks, purchased directly from the bank, I understand that there are no additional records regarding the purchase of those checks. That said, I know that Plaintiff cashed the checks, and therefore received all of the money due under the settlement. Copies of those two checks are attached hereto at Exhibit "A".

13.     I understand that Plaintiff originally accepted the payment from Romulo and indicated that he was satisfied. However, I understand that he subsequently approached Romulo about a scheme to try and defraud me out of additional money; however, my brother informed me that he declined to participate. Nevertheless, I understand that Plaintiff has since contacted his attorney and claimed that I did not make the settlement payment.

14.     In an attempt to prove that the payment was made, beyond the settlement checks which I provided, Romulo also helped me to obtain a letter from Banco Bolivariano confirming that the checks had been purchased and paid. I provided that letter to my attorney, and I understand that he provided the letter to Plaintiff's attorney.

15.     I understand that Plaintiff's attorney claims that an investigation confirmed that this letter was false. However, I do not believe that this investigation was properly conducted, or

-3-

that it reached the correct result. Regardless, I have obtained the sworn statement attached hereto at Exhibit "B" from Romulo, confirming that the settlement payments were made.

16.     I will continue making the payments for Plaintiff's attorney's fees that are required under the settlement agreement. However, I cannot afford to pay Plaintiff the amount he was due under the settlement a second time, let alone a lump-sum payment in the amount of $90,679.14. This would not only be a completely unjust result, but it would ruin me financially, and all because Plaintiff used my family to extort the full settlement amount up-front.

17.     I am more than willing to come into Court to provide additional sworn testimony if necessary, but I hope that the Court will accept this statement as proof that there is no need to take further action on the settlement agreement.

I declare under penalty of perjury under the laws of the United States of America and the State of New Jersey that the foregoing is true and correct.

DATED: January 10, 2020

_____
CARLOS RIVERA-SALTO

Sworn to before me this 10th
day of January 2020.

_____
Notary Public

REYNA I HERNANDEZ PANTALEON
Notary Public - State of New Jersey
My Commission Expires Jun 3, 2024

- 4 -

# EXHIBIT "A"





ESPACIO PARA ENDOSO (en caso de requerirse)
ENDOSO A LA ORDEN DE:

_____
Nombre

_____
Firma del endosante (1° beneficiario)

ESPACIO PARA DEPOSITANTE O PERSONA QUE COBRA

_____
0300541208
Firma

**B** Banco Bolivariano
BANCO BOLIVARIANO C.A.
AGENTE PAGADOR





# EXHIBIT "B"





Factura: 001-003-000001283                    20200301005C00028

**FIEL COPIA DE DOCUMENTOS EXHIBIDOS EN ORIGINAL N° 20200301005C00028**

RAZÓN: De conformidad al Art. 18 numeral 5 de la Ley Notarial, doy fe que la(s) fotocopia(s) que antecede(n) es (son) igual(es) al(los) documento(s) original(es) que corresponde(n) a OFICIO y que me fue exhibido en 1 foja(s) útil(es). Una vez practicada(s) la certificación(es) se devuelve el(los) documento(s) en 1 foja(s), conservando una copia de ellas en el Libro de Certificaciones. La veracidad de su contenido y el uso adecuado del (los) documento(s) certificado(s) es de responsabilidad exclusiva de la(s) persona(s) que lo(s) utiliza(n).

AZOGUES, a 8 DE ENERO DEL 2020, (11:35).

NOTARIO(A) LIA JOSEFINA NEIRA PALOMEQUE
NOTARÍA QUINTA DEL CANTÓN AZOGUES

Azogues 08/01/2020

SEÑOR DAVID A TAUSTER
ASESOR JURÍDICO DE CARLOS RIVERA
CUIDAD. -

De nuestras consideraciones:

En respuesta a la solicitud recibida debo informar que:

- Con fecha marzo 02 del 2019 se cancelo la cantidad de veinte mil dólares de los Estados Unidos (20.000.00 USD) al señor Robinson Gilberto Salto Z. con soporte de documento en cheque.
- Con fecha marzo 05 del 2019 se canceló la cantidad de veinte mil dólares de los Estados Unidos (20.000.00 USD) al señor Robinson Gilberto Salto Z. con soporte de documento en cheque.
- Sumado las dos cantidades dan un total de cuarenta mil dólares de los Estados Unidos (40.000.00 USD) que es la cantidad que se debía al Robinson Gilberto Salto Z. con CI 030054120-8

La información es confidencial y está dirigida únicamente a su destinatario pudiendo este a su vez hacer uso para lo crea conveniente para sus intereses.

Muy atentamente,

----------------------------------
Rómulo H. Rivera